UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LOAR DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 C 7700 |
| | ) | |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| SOUTHERN WINE & SPIRITS OF ILLINOIS, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

After defendant Southern Wine & Spirits of Illinois ("Southern Wine")[1] terminated his employment, plaintiff Loar Davis ("Davis") filed a pro se complaint alleging that defendant violated Title VII of the Civil Rights Act of 1964 by discriminating against him on the basis of his race and color and by retaliating against him. Defendant has moved for summary judgment. For the reasons set forth below, the Court grants defendant's motion [39] for summary judgment. Defendant's motion [54] to dismiss for want of prosecution is denied as moot.

**I.   BACKGROUND**

When defendant filed its motion for summary judgment, it served plaintiff with the required *Notice to Pro Se Litigant Opposing Motion for Summary Judgment*. Plaintiff has not responded to defendant's motion for summary judgment, despite having plenty of time to do so. The Court originally gave plaintiff more than six weeks to respond to defendant's motion, and, on plaintiff's request, twice extended plaintiff's time to respond, such that plaintiff had a total of seventeen weeks of time to respond. The Court denied plaintiff's third motion for extension of

---

[1]Defendant apparently does business as Southern Wine & Spirits of Illinois, but its official name, apparently, is Southern Glazer's Wine and Spirits of Illinois, LLC.

time, because he filed the motion after the deadline had passed and because the Court had previously stated that the deadline would not be further extended.

The upshot of plaintiff's failure to respond is that the Court deems admitted all of the facts in defendant's statement of undisputed facts that defendant has properly supported with citations to evidence admissible for summary judgment purposes. Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). Thus, the Court has deemed admitted the facts defendant put in its statement of facts to the extent those facts were supported by citations to evidence. Nearly all were. Thus, the following facts are undisputed.

Defendant Southern Wine is a liquor distributor. It operates a warehouse in Bolingbrook, Illinois, which is where it employed plaintiff Loar Davis. The warehouse operated overnight to sort the alcoholic beverages that would be distributed to customers the following day. The night shift at the warehouse typically ran four nights per week from 7:00 p.m. until 5:30 a.m., with a thirty-minute, unpaid break. Defendant maintained a work rule prohibiting sleeping during work hours.

The events that gave rise to this lawsuit began on September 29, 2015, when plaintiff told supervisor JL Snyder ("Snyder") that another supervisor, Mike Ryan ("Ryan") had threatened

him. Specifically, plaintiff told Snyder that Ryan had said to plaintiff, "I'll take you outside and kick your fucking ass right now."

Two days later, in the early morning hours of October 1, 2015, James Brown ("Brown"), a supervisor on the night shift, observed plaintiff sleeping and then took a picture of plaintiff sleeping. According to Brown, plaintiff's "eyes were closed and his head was slouched over toward his left shoulder." Brown saw plaintiff's feet propped on a box. Three other individuals, Benny Romanini ("Romanini") (a manager on the day shift), Ricky Schrader ("Schrader") (a night shift supervisor) and Ryan (a leadman on the night shift) also observed plaintiff sleeping. As Romanini described it:

> I called his name but he did not stir. I called his name again—this time louder—but got no response. . . . The sorter machinery had been turned off earlier that night so he would have heard me and responded if he had been awake. I said, "Loar Davis, it's time to go home" even louder and this time he awoke with a start. He had not moved at all until I said his name the third time.

(Def. Statement of Facts ¶ 7). It is undisputed that Brown, Romanini, Schrader and Ryan believed that plaintiff was sleeping. Plaintiff testified that he was not sleeping and that he does not know what Brown, Romanini, Schrader and Ryan believed.

By 6:00 a.m., Brown had emailed the photograph he had taken of plaintiff to William Arends, Jr. ("Arends"), who was, at the time, defendant's Director of Warehousing and Distribution. In the same email, Brown informed Arends that plaintiff had been sleeping. Arends spoke with Romanini, as well as the Vice President of Human Resources, Valarie Parker ("Parker") and the Vice President of Operations, Dale Huhnke ("Huhnke"). That afternoon, Arends telephoned plaintiff to inform him that he was suspended pending an investigation.

Plaintiff was a member of Distillery Workers Local No. 3, whose collective bargaining agreement with defendant required that a Union Steward or Union Representative be present

when an employee was disciplined. Accordingly, defendant set up a meeting between Parker, Joe Garcia ("Garcia") (the Director of Security), a Union Representative and plaintiff. That meeting happened on October 5, 2015. During that meeting, plaintiff gave Parker a grievance, in which he alleged race discrimination. Specifically, plaintiff alleged that he was subjected to race discrimination days earlier when Ryan had threatened him (by saying he would take plaintiff outside and "kick his fucking ass"). After the meeting, Garcia completed his investigation, including a review of video, and reported his conclusion to Parker, Huhnke and Arends. Garcia's conclusion was that plaintiff had been sleeping.

It was up to Arends and Huhnke to decide the appropriate discipline for plaintiff. In considering the appropriate discipline, they considered the circumstances of another employee, Anthony Chiarelli ("Chiarelli"), who had been accused of sleeping during work hours. In Chiarelli's case, one person had seen Chiarelli laying down, but several other employees said Chiarelli had not been sleeping. Defendant gave Chiarelli a verbal warning. In plaintiff's case, Arends was convinced plaintiff was sleeping, because four supervisors had witnessed plaintiff sleeping and because they had to say plaintiff's name three times before he woke up. Arends and Huhnke decided to terminate plaintiff's employment. Thus, on October 8, 2015, Parker sent a letter to plaintiff to inform him that his employment had been terminated for sleeping during work hours in violation of a company work rule.

During his deposition, plaintiff stated that he thought another employee, Ray Luska ("Luska") had also been found sleeping during work hours. The undisputed facts are that Luska was never accused of sleeping during work hours. He resigned from his employment with defendant in 2014.

Notwithstanding the fact that plaintiff's employment was terminated, defendant still investigated plaintiff's complaint of discrimination. The investigation was conducted by Selena Seabrooks ("Seabrooks"), one of defendant's employees. Seabrooks spoke to plaintiff by phone several times during her investigation and also interviewed other employees from the night shift. Ultimately, Seabrooks concluded that plaintiff had not been a victim of race discrimination. In February 2016, Seabrooks informed plaintiff that she found no evidence to substantiate his claim of discrimination.

## II.     STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III.    DISCUSSION

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII also makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

In his complaint, plaintiff alleges that defendant violated Title VII in two respects when it terminated his employment. Plaintiff alleges that that decision was made on the basis of his race or color and that it was made in retaliation for his complaint of race discrimination. Defendant moves for summary judgment on both claims.

### A. Plaintiff's disparate treatment claim

With respect to plaintiff's claim that he was discharged due to his race or color, the Court must decide whether "'the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge.'" *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 808 (7th Cir. 2017) (quoting *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). Where, as here, the record contains no direct evidence of discrimination, a plaintiff may take advantage of the *McDonnell Douglas* burden-shifting framework by first making out a *prima facie* case of discrimination. *McKinney*, 866 F.3d at 807.

To make out a *prima facie* case of discrimination, a plaintiff must put forth evidence that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) a similarly-situated employee outside of his protected class was treated more favorably. *McKinney*, 866 F.3d at 807. The "burden of establishing a prima facie case of disparate treatment is not onerous." *Texas*

6

*Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  It requires plaintiff to show that he was "rejected under circumstances which give rise to an inference of unlawful discrimination," and the "standard is not inflexible" because facts vary in different cases. *Burdine*, 450 U.S. at 253 and n.6.

Here, as defendant points out, plaintiff cannot make out a *prima facie* case of discrimination, because he cannot show that similarly-situated individuals outside of his protected class were treated more favorably.  The undisputed evidence is that Luska is not similarly situated, because he was never accused of sleeping while on duty.  Chiarella is not similarly situated, because the accusation that he was sleeping was not substantiated.  *Tate v. Ancell*, 551 Fed.Appx. 877, 889 (7th Cir. 2014) (concluding that a plaintiff who was discharged for sleeping on the job was not similarly situated to an employee against whom accusations of sleeping at work were unsubstantiated).  Unlike the situation with plaintiff, who was seen sleeping by four supervisors, one of whom took a photograph, the accusation that Chiarelli had been sleeping was unsubstantiated.  Although one employee saw Chiarelli laying down, several other employees said he had not been sleeping.  Thus, plaintiff fails to make out a *prima facie* case of discrimination.

Even if he could, defendant has articulated a legitimate, non-discriminatory reason for the decision to terminate his employment:  he was sleeping while on duty.  Thus, plaintiff has the burden to show that the stated reason was pretext for discrimination on the basis of his race or color.  *McKinney*, 866 F.3d at 807 (citing *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)).  A pretext is a dishonest explanation, rather than an error.  *Bodenstab v. County of Cook*, 569 F.3d 651, 657 (7th Cir. 2009).  "It is not enough to demonstrate that the employer was mistaken, inconsiderate, short-fused, or otherwise benighted; none of those possibilities violates

7

federal law. Poor personal management finds its comeuppance in the market rather than the courts." *Yindee v. CCH Inc.*, 458 F.3d 599, 602 (7th Cir. 2006) (internal citations omitted); *see also Boston v. U.S. Steel Corp.*, 816 F.3d 455, 465 (7th Cir. 2016) (noting that the Seventh Circuit has long championed employers' rights to make their own decisions based on honest beliefs) (quoting *Green v. National Steel Corp., Midwest Div.*, 197 F.3d 894, 899 (7th Cir. 1999)).

In this case, plaintiff testified that he was not, in fact, sleeping. That does not, however, suggest defendant's belief was pretext for discrimination. Defendant put forth undisputed evidence that four supervisors witnessed plaintiff sleeping (one even took a photograph, which is in the summary judgment record) and honestly believed him to be sleeping. Defendant has put forth undisputed evidence that Romanini had to say plaintiff's name three times before he awoke "with a start." The record does not support a conclusion that defendant's reason for discharging plaintiff was pretext for discrimination.

In sum, no reasonable jury could conclude that defendant discriminated against plaintiff on the basis of his race or color when it terminated his employment. Defendant's motion for summary judgment is granted as to the disparate treatment claim.

### B. Plaintiff's retaliation claim

Plaintiff also alleges in his complaint that he was retaliated against for having complained that Ryan subjected him to race discrimination. Defendant moves for summary judgment on this claim as well.

To prevail on a claim of retaliation, a plaintiff must show: (1) he engaged in protected conduct; (2) he suffered an adverse action; and (3) a causal connection between the two. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). For a retaliation claim, the

necessary causal connection is but-for causation. *University of Tex. Sw. Med. Ctr. v. Nassar*, 510 U.S. 338, 362 (2013).

In this case, plaintiff made two complaints that might be thought of as protected conduct. First, on September 29, 2015, plaintiff complained to supervisor Snyder that Ryan had threatened to take plaintiff outside and "kick his fucking ass." Second, on October 5, 2015, plaintiff filed a grievance alleging that Ryan's threat on September 29, 2015 had constituted race discrimination.

Defendant argues that the first complaint on September 29, 2015 was not protected conduct, because plaintiff made no mention of unlawful discrimination on the basis of his race when he complained. The Court agrees. As the Seventh Circuit has explained, showing statutorily protected conduct:

> requires more than simply a complaint about some situation at work, no matter how valid the complaint might be. To be protected under Title VII, his complaint must have indicated "the discrimination occurred because of sex, race, national origin, or some other protected class . . . Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient."

*Cole v. Board of Trustees of N. Ill. Univ.*, 838 F.3d 888, 901 (7th Cir. 2016) (quoting *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)). Here, there is no evidence that plaintiff mentioned race discrimination when he complained on September 29, 2015. Nor was the content of plaintiff's complaint suggestive of race discrimination. Accordingly, the Court agrees that plaintiff was not engaged in protected conduct when he complained on September 29, 2015.

It is clear, though, that plaintiff engaged in protected conduct on October 5, 2015 when he filed his grievance alleging race discrimination. It is also undisputed that defendant terminated plaintiff's employment three days later. The timing could be thought suspicious, but suspicious timing is rarely enough to establish causation on a retaliation claim. *Castro v. DeVry*

*Univ., Inc.*, 786 F.3d 559, 565 (7th Cir. 2015) ("temporal proximity alone is 'rarely sufficient' to establish causation") (quoting *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011)). Suspicious timing is definitely not enough in this case, where plaintiff complained of discrimination only after he was accused of misconduct. The undisputed evidence is that by 6:00 a.m. on the morning of October 1, 2015, Arends had received reports (including a photograph) that plaintiff had been sleeping at work. It is also undisputed that four supervisors witnessed and believed plaintiff was sleeping. Plaintiff did not complain about race discrimination until days later, at his disciplinary meeting (which was required by the collective bargaining agreement) on October 5, 2015. That complaint of discrimination did not insulate him from discipline. *See Hatmaker v. Memorial Med. Ctr.*, 619 F.3d 741, 745 (7th Cir. 2010) ("participation [in an investigation of employment discrimination] doesn't insulate an employee from being discharged for conduct that, if it occurred outside of an investigation, would warrant termination").

No reasonable jury could conclude that defendant retaliated against plaintiff for complaining of race discrimination when it terminated his employment. Defendant is entitled to summary judgment on the retaliation claim.

## IV. CONCLUSION

For the reasons set forth above, the Court grants defendant's motion [39] for summary judgment. The Court denies as moot defendant's motion [54] to dismiss for want of prosecution. Civil case terminated.

**SO ORDERED.**  **ENTERED:** May 30, 2018

_____
**JORGE L. ALONSO**
**United States District Judge**